Case No. 21-2868

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

BACHMAN SUNNY HILL FRUIT FARMS, INC.

Petitioner-Appellant

v.

PRODUCERS AGRICULTURE INSURANCE COMPANY

Respondent-Appellee

Appeal from the United States District Court
Western District of Michigan
Case No. 1:20-cv-01117

**APPELLEE PRODUCERS AGRICULTURAL INSURANCE COMPANY'S
BRIEF ON APPEAL**

JOSEPHINE A. DELORENZO
ELAINE M. POHL
OLIVIA M. PAGLIA
Plunkett Cooney
38505 Woodward Ave, Suite 100
Bloomfield Hills, MI 48304
Tel: (248) 901-4000
jdelorenzo@plunkettcooney.com
ephol@plunkettcooney.com
opaglia@plunkettcooney.com

*Attorneys for Respondent-Appellee
Producers Agriculture Insurance Company*

## CORPORATE DISCLOSURE

Pursuant to Sixth Circuit Rule 26.1, Respondent-Appellee, Producers Agricultural Insurance Company, makes the following disclosure:

1.    Is said party a subsidiary or affiliate of a publicly owned corporation?

Yes.    Producers Agriculture Insurance Company is a wholly owned subsidiary of Pro Ag Management, Inc., which is a wholly owned subsidiary of Producers Ag Insurance Group, Inc.  Producers Ag Insurance Group, Inc. is a wholly owned subsidiary of HCC Insurance Holdings, Inc., which is a wholly owned subsidiary of Tokyo Marine Holdings, Inc., a publicly traded company on the Tokyo stock Exchange.

2.    Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?

No.

DATED:  March 9, 2022                          /s/*Josephine A. DeLorenzo*
                                                       Josephine A. DeLorenzo

# **TABLE OF CONTENTS**

**Page**

CORPORATE DISCLOSURE ...................................................................1

TABLE OF AUTHORITIES ................................................................. iii

STATEMENT REGARDING ORAL ARGUMENT ............................. vii

JURISDICTIONAL STATEMENT .........................................................1

STATEMENT OF QUESTIONS PRESENTED.......................................2

STATEMENT OF THE CASE.................................................................3

    A.    Nature of the case. ................................................................3

    B.    This dispute involves the federal crop insurance program. ..................3

    C.    Bachman sustained crop damage and alleges that Producers violated terms of the Common Policy when it adjusted the loss. .........5

    D.    The parties arbitrated their dispute and the arbitrator ruled in favor of Producers. ..............................................................5

    E.    Bachman sought an after-the-fact final agency determination. ............8

    F.    Course of proceedings ...........................................................9

        1.    Producers moved to dismiss the petition............................... 9

        2.    The district court ruled in favor of Producers.............................12

STANDARD OF REVIEW ...................................................................15

SUMMARY OF THE ARGUMENT .....................................................17

ARGUMENT I.......................................................................................20

    The District Court Correctly Determined That The Petition Fails To Plead A Valid Cause Of Action Under The Arbitration Act, Which Provides Bachman's Exclusive Remedy For Judicial Review..............................................20

    A.    The Arbitration Act provides the exclusive remedy for judicial review of arbitration awards issued pursuant to the Common Policy. ...................................................................20

    B.    Despite Bachman's protestations to the contrary, the federal regulations and Common Policy do not permit a separate cause of action apart from the Arbitration Act. ............................................27

ARGUMENT II ....................................................................................37

The District Court Correctly Determined That Bachman's Petition Was Untimely Under The Arbitration Act, Thus Requiring Dismissal With Prejudice. ...................................................37

A.    Bachman's petition was untimely........................................................37

B.    Bachman's arguments to the contrary do not compel a different conclusion..............................................................................................41

CONCLUSION ........................................................................................48

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM – DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

# TABLE OF AUTHORITIES

**Page**

## CASES

*Ackerman v. United States Dep't of Agric.*,
   995 F.3d 528 (6th Cir. 2021) ...................................................................4

*Ackerman v. United States Dep't of Agric., No. 17-CV-11779*,
   2018 WL 1858165 (E.D. Mich. Apr. 18, 2018), on
   reconsideration in part, No. 17-CV-11779, 2018 WL 2560395
   (E.D. Mich. June 1, 2018) .....................................................................24

*All. Ins. Co. v. Wilson*,
   384 F.3d 547 (8th Cir. 2004) ..................................................................4

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .............................................................................15

*Bay Shore Power Co. v. Oxbow Energy Sols., LLC*,
   969 F.3d 660 (6th Cir. 2020) ................................................................44

*Bloch v. Ribar*,
   156 F.3d 673 (6th Cir. 1998) ................................................................15

*Bowles v. Russell*,
   551 U.S. 205 (2007) .............................................................................38

*Campbell's Foliage, Inc. v. Fed. Crop Ins. Corp.*,
   2013 WL 12086666 (S.D. Fla. Apr. 8, 2013)........................................23

*Cigna Ins. Co. v. Huddleston*,
   986 F.2d 1418 (5th Cir. 1993)...............................................................45

*Cir. City Stores, Inc. v. Adams*,
   532 U.S. 105 (2001) .............................................................................21

*Corey v. New York Stock Exch.*,
   691 F.2d 1205 (6th Cir. 1982)................................................. 25, 27, 39

*Davis v. Producers Agr. Ins. Co.*,
   762 F.3d 1276 (11th Cir. 2014).................................................. 4, 5, 20

*Decker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   205 F.3d 906 (6th Cir. 2000).................................................. 24, 25, 27

*Farmers Mut. Hail Ins. Co. of Iowa v. Miller*,
   366 F. Supp. 3d 974 (W.D. Mich. 2018)................................. 31, 32, 33

*Farmers Mut. Hail Ins. Co. of Iowa v. Miller*,
  Case No. 1:19-cv-1005 (W.D. Mich. Sept. 9, 2020)................................... 32, 33, 1

*Farmers Mut. Hail Ins. Co. of Iowa v. Miller*,
  No. 20-1978, 2021 WL 3044275 (6th Cir. July 20, 2021)................... 8, 27, 33, 1

*Florasynth, Inc. v. Pickholz*,
  750 F.2d 171 (2d Cir. 1984) ........................................................ 40, 44

*Gibbens v. OptumRx, Inc.*,
  778 F. App'x 390 (6th Cir. 2019).........................................................16

*Great Am. Ins. Co. v. Russell*,
  914 F.3d 1147 (8th Cir. 2019)...................................................... 21, 22

*In re 2000 Sugar Beet Crop Ins. Litig.*,
  228 F. Supp. 2d 992 (D. Minn. 2002) ..................................................24

*Int'l Union of Operating Engineers, Local No. 841 v. Murphy
  Co.*,
  82 F.3d 185 (7th Cir. 1996)..................................................................41

*Jackson v. United States*,
  751 F.3d 712 (6th Cir. 2014)...............................................................45

*John R. Sand & Gravel Co. v. United States*,
  552 U.S. 130 (2008) ..................................................................... 43, 44

*Karo v. NAU Country Ins. Co.*,
  901 N.W.2d 689 (Neb. 2017) .................................................... 37, 38, 42

*Mezibov v. Allen*,
  411 F.3d 712 (6th Cir. 2005)...............................................................15

*Milberg, LLP v. Drawrah Ltd.*,
  844 F. App'x 397 (2d Cir. 2021)..........................................................40

*Nationwide Mut. Ins. v. Home Ins. Co.*,
  429 F.3d 640 (6th Cir. 2005)...............................................................15

*O'Neal Constructors, LLC v. DRT Am., LLC*,
  991 F.3d 1376 (11th Cir. 2021)............................................................40

*Occidental Fire & Cas. Co. of N. Carolina v. Bush*,
  2020 WL 2733811 (E.D. Mo. May 26, 2020)....................................23

*Overdorff v. NAU Country Ins. Co.*,
  No. CV 18-79, 2018 WL 3637471 (W.D. Pa. July 31, 2018)..............................42

*Pfannenstiel v. Merrill Lynch, Pierce, Fenner & Smith*,
   477 F.3d 1155 (10th Cir. 2007) ............................................................. 40

*Piccolo v. Dain, Kalman & Quail, Inc.*,
   641 F.2d 598 (8th Cir. 1981) ................................................................. 40

*Samaan v. Gen. Dynamics Land Sys., Inc.*,
   835 F.3d 593 (6th Cir. 2016) ................................................................. 16

*Scheid v. Fanny Farmer Candy Shops, Inc.*,
   859 F.2d 434 (6th Cir. 1988) ................................................................. 15

*Sebelius v. Auburn Regional Medical Center*,
   568 US 145; 133 S Ct 817; 184 L Ed 2d 627 (2013) .......................... 38

*Sec. & Exch. Comm'n v. Fowler*,
   6 F.4th 255 (2d Cir.), cert. denied, 142 S. Ct. 590 (2021) ................. 43

*Svancara v. Rain & Hail, LLC*, No. 8:09CV144;
   2009 WL 2982906 (D. Neb. 2009) ....................................................... 24

*Taylor v. Nelson*,
   788 F.2d 220 (4th Cir. 1986) ................................................................. 45

*Truitt v. County of Wayne*,
   148 F.3d 644 (6th Cir. 1998) ................................................................. 45

*Uhl v. Komatsu Forklift Co.*,
   512 F.3d 294 (6th Cir. 2008) ................................................................. 26

## <u>STATUTES</u>

28 U.S.C. § 1291 ............................................................................................. 1

7 U.S.C. §1501 ............................................................................................... 3

9 U.S.C. § 10 ................................................................................................. 10

9 U.S.C. § 10(a) ..................................................................................... 16, 22

9 U.S.C. § 11 ......................................................................................... 10, 22

9 U.S.C. § 12 ........................... 10, 11, 13, 18, 22, 37, 39, 40, 41, 42, 43, 44, 46, 47

9 U.S.C. § 9 ........................................................... 12, 15, 19, 38, 43, 44

9 U.S.C.A. § 1 ................................................................................................ 3

## <u>RULES</u>

7 C.F.R. § 400.766 ..................................................... 11, 17, 27, 28, 29

7 C.F.R. § 400.766(b)(1) .............................................................................. 8

7 C.F.R. § 400.766(b)(1)(ii) ...................................................... 8, 34, 35, 46

7 C.F.R. § 400.766(b)(4) ...................................................... 30, 32, 33, 35

7 C.F.R. § 400.766(b)(4)(i) .................................................................30

7 C.F.R. § 400.766(b)(4)(ii) ...............................................................30

7 C.F.R. § 400.767 ..............................................................................34

7 C.F.R. § 400.767(a) ................................................................... 29, 34

7 C.F.R. § 457.8 ............................................................................4, 20

Fed. R. Civ. P. 12(b)(6) ................................................................ 10, 15

Sixth Circuit Rule 34(a) ................................................................... vii

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Pursuant to Sixth Circuit Rule 34(a), Respondent-Appellee, Producers Agricultural Insurance Company, requests that the Court docket this appeal for oral argument.  Oral argument will afford counsel the opportunity to address any questions which the Court may have concerning the lower court record and the specifics of the parties' respective positions on appeal.  It is Respondent-Appellee's belief that oral argument is necessary, will be beneficial for all involved, and will significantly aid this Court's decisional process.

## <u>JURISDICTIONAL STATEMENT</u>

Respondent-Appellee Producers Agriculture Insurance Company agrees that the Court has jurisdiction to consider this appeal from a final order of the district court, pursuant to 28 U.S.C. § 1291.

## <u>STATEMENT OF QUESTIONS PRESENTED</u>

### I.

Did The District Court Correctly Determine That The Petition Fails To Plead A Valid Cause Of Action Under The Arbitration Act, Which Provides Bachman's Exclusive Remedy For Judicial Review?

### II.

Did The District Court Correctly Determine That Bachman's Petition Was Untimely Under The Arbitration Act, Thus Requiring Dismissal With Prejudice?

## STATEMENT OF THE CASE

**A.    Nature of the case.**

This case involves a dispute arising under a federal crop insurance policy entered into by Petitioner-Appellant, Bachman Sunny Hill Fruit Farms, Inc. ("Bachman"), and Respondent-Appellee, Producers Agriculture Insurance Company ("Producers"). Bachman disagrees with a March 26, 2020 arbitration award (R.E. 1-5, PageID.58-71), however, the district court properly granted Producers' motion to dismiss because Bachman failed to state a claim for relief under the Federal Arbitration Act ("Arbitration Act"), 9 U.S.C.A. § 1 *et seq*., which provides Bachman's exclusive remedy for judicial review. Additionally, Bachman's action was untimely under the Arbitration Act. This Court should affirm the district court's order and reject Bachman's attempt to create a new cause of action for "nullification" unconstrained by the jurisdictional time period clearly set forth in the Arbitration Act.

**B.    This dispute involves the federal crop insurance program.**

The federal crop insurance program is authorized by the Federal Crop Insurance Act, as amended ("Crop Insurance Act"), 7 U.S.C. §1501, *et seq*. The Federal Crop Insurance Corporation ("FCIC") was created as a wholly owned government corporation within the U.S. Department of Agriculture in 1938 to carry out the program. As this Court has explained, beginning in the 1930s, "the FCIC provided various forms of crop insurance directly to farmers. Congress

expanded the crop-insurance program when it enacted the Federal Crop Insurance Act of 1980 …, which for the first time allowed private actors to offer crop-insurance policies approved by the FCIC.  Those policies include the Common Crop Insurance Policy, whose provisions are codified at 7 C.F.R. § 457.8."[1] *Ackerman v. United States Dep't of Agric.*, 995 F.3d 528, 529 (6th Cir. 2021) (footnote added).  "Currently, the FCIC insures farmers directly and reinsures private companies that insure farmers."  *All. Ins. Co. v. Wilson*, 384 F.3d 547, 549-550 (8th Cir. 2004).  "In order to qualify for reinsurance through the FCIC, the policies written by approved private insurers must comply with the [Crop Insurance Act] and its accompanying regulations.  Consequently, '[t]he [Crop Insurance Act] generally establishes the terms and conditions of insurance, ... even though the crop insurance policy is between the farmer and an approved insurance provider.'"  *Davis v. Producers Agr. Ins. Co.*, 762 F.3d 1276, 1284 (11th Cir. 2014) (citations omitted).  As is relevant here, "[t]he standard language found in the regulations for inclusion in the common crop insurance contract provides that all disputes between insurer and insured are subject to mediation and/or arbitration." *Id.* at 1285.

The U.S. Department of Agriculture's Risk Management Agency manages

---

[1] 7 C.F.R. § 457.8 was modified effective November 30, 2021.

FCIC, and it approves and supports products, develops and approves the premium rates, administers premium subsidies, reimburses private companies for their administrative and operating costs (*i.e.*, delivery costs for selling and servicing the policies), and reinsures company losses. See *Davis*, 762 F.3d at 1284. The terms of crop insurance policies are mandated by the Risk Management Agency and may not be altered by an insurer.

## C.    Bachman sustained crop damage and alleges that Producers violated terms of the Common Policy when it adjusted the loss.

Bachman, which grows apples and other crops in Fairfield County, Ohio, entered into an insurance agreement with Producers for the 2017 crop year "pursuant to the terms of the Common Crop Insurance Policy [Common Policy] and the Apple Crop Insurance Provisions [Apple Policy]." (R.E. 1, Petition, ¶¶ 5-6, PageID.2; R.E. 1-1, Common Policy, PageID.7-48; RE 1-2, Apple Policy, PageID.49-53). Bachman alleges that following hail damage to its apple crop, Producers improperly paid only a small portion of Bachman's indemnity claim. (R.E. 1, Petition, ¶¶ 8-11, PageID.3).

## D.    The parties arbitrated their dispute and the arbitrator ruled in favor of Producers.

By a demand letter dated June 6, 2019,[2] Bachman initiated arbitration

---

[2] Bachman's initial demand was received on May 2, 2019, but it did not meet Risk Management Agency requirements for initiating a self-administered arbitration *(cont'd on next page)*

pursuant to § 20 of the Common Policy. (R.E. 1, Petition, ¶ 12, PageID.3). Bachman argued that the parties' insurance agreements incorporated the Loss Adjustment Standards Handbook ("Loss Adjustment Handbook") (R.E. 1-3, PageID.54-55) and Apple Loss Adjustment Standards Handbook ("Apple Loss Handbook") (R.E. 1-4, PageID.56-57),[3] and that contrary to provisions therein, Producers' adjuster did not inform Bachman of the right to an independent appraisal and also improperly directed Bachman to harvest its crop (R.E. 1, Petition, ¶¶ 7-10, PageID.3; R.E. 1-5, Arbitration Award, PageID.59-60, 62). At the arbitration hearing held February 4 and 5, 2020, the arbitrator considered these

outside the American Arbitration Association. Bachman then revised its demand to meet Risk Management Agency requirements and that demand was received by Producers on June 6, 2019.

[3] As explained by the arbitrator:

> The FCIC develops and publishes various procedures for administering the insurance sold by AIP's, among which are the Loss Adjustment Standards Handbook … and the Loss Adjustment Manual Standards Handbook …. The management arm of the FCIC, i.e., the Risk Management Agency …, interprets the policies and procedures, and in the course of doing so issues Final Agency Determinations, bulletins and other publications, all of which are found on their website. AIP's, their employees and all insureds are bound by the … [Final Agency Determinations] and the terms of the [Common Policy], which cannot be waived or varied in any way unless authorized by the policy or agreed to by FCIC. The preamble to the [Common Policy] indicates that these procedures will be used in the administration of the policy, including the adjustment of any loss or claim.

(R.E. 1-5, March 26, 2020 Arbitration Award, pp 1-2, PageID.58-59).

factual and legal issues as well as issues relating to the amount of indemnity to which Bachman was entitled. (R.E. 1-5, PageID.58, 62-63). The arbitrator heard testimony from Bachman's owner, Greg Bachman; Dustin Converse, Producers' adjuster; Karen Landman, Converse's supervisor; Scott Colville, Bachman's insurance agent and expert; and Desiree King, a Risk Management Agency representative.[4]

As is relevant to this appeal, Ms. King testified at the arbitration that the Loss Adjustment Handbook and Apple Loss Handbook are "[not] part of the policy." (R.E. 1-5, March 26, 2020 Arbitration Award, PageID.59, 63-64). Under the federal regulations, Ms. King's testimony constituted a final agency determination and the arbitrator expressly relied on this testimony, explaining:

> Claimant's own expert [Mr. Colville] testified that "the handbooks … are more of a step-by-step instruction for the adjuster on what their responsibilities are versus something that may be in the policy." This point was also clarified by Respondent's expert, Desiree King, whose job it is to annually review and interpret policies and procedures. She testified unequivocally the [handbooks] are "[not] part of the policy."

(R.E. 1-5, Arbitration Award, PageID.63). Thus, the arbitrator concluded that the Loss Adjustment Handbook "is not a part of the insurance contract, and any failure to comply with its provisions would not constitute a breach of contract." (*Id.*,

---

[4] Prior to the arbitration, on November 26, 2019 Ms. King was also deposed by Bachman.

PageID.64).  With respect to the specific factual issues regarding the proper amount of indemnification, the arbitrator concluded that Producers adjusted Bachman's claim "exactly as required by [Bachman's] insurance policy …." (*Id*., PageID.67).  Thus, on March 26, 2020, the arbitrator entered an arbitration award denying Bachman's claims in their entirety.  *(Id*., PageID.58-71).

### E.      Bachman sought an after-the-fact final agency determination.

On May 8, 2020, more than a month after the arbitration award was rendered, Bachman sought to obtain another final agency determination "regarding the interpretation of the preamble and section 14(1) of the Common Crop Insurance Basic Provisions."[5]  (R.E. 1-6, FAD 298, PageID.72).  The preamble states in relevant part that the insurer "will use the procedures (handbooks, manuals, memoranda and bulletins), as issued by FCIC and published on RMA's

---

[5] As discussed below in the argument section, 7 C.F.R. § 400.766(b)(1) outlines the procedure for requesting an agency interpretation, and this Court has noted that FCIC "recommends that regulated entities seek its interpretation ***before*** an arbitrator makes a decision," though a party may still "ask the agency for its views after the arbitrator acts."  *Farmers Mut. Hail Ins. Co. of Iowa v. Miller*, No. 20-1978, 2021 WL 3044275, at *2 (6th Cir. July 20, 2021) (emphasis added). However, Ms. King's testimony was consistent with 7 C.F.R. § 400.766(b)(1)(ii), which provides that "[t]he final agency determination or FCIC interpretation may take the form of a written interpretation or, at the sole discretion of FCIC, ***may take the form of testimony from an employee of [Risk Management Agency]*** expressly authorized in writing to provide interpretations of policy or procedure on behalf of FCIC." (Emphasis added).  Ms. King not only testified at the arbitration, but she was also deposed by Bachman's counsel prior to the arbitration.  Producers followed Risk Management Agency procedure for securing Ms. King as a witness and she was expressly authorized to provide FCIC interpretations.

Web site … in the administration of this policy, including the adjustment of any loss or claim submitted hereunder." (*Id.*).

The resulting Final Agency Determination issued August 20, 2020,[6] did not find that the arbitrator had improperly interpreted policy or procedure at the arbitration. Rather, FAD-298 rendered a determination that was contrary to the determination provided by Ms. King, the Risk Management Agency representative at the arbitration, and instructed that "procedures established by FCIC in the [Loss Adjustment Handbook] and the [Apple Loss Handbook] are part of the contract between the AIP and the Policy Holder." (R.E. 1, Petition, ¶ 17, PageID.5; R.E. 1-6, FAD 298, PageID.74).

## F.    Course of proceedings

### 1.    Producers moved to dismiss the petition.

On November 19, 2020, more than three months after obtaining the August 4, 2020 final agency determination, and nearly eight months after the March 26, 2020 Arbitration Award, Bachman filed a "Petition to Nullify Arbitration Award," alleging that it is entitled to judicial review of the arbitrator's alleged error in the March 26, 2020 arbitration award pursuant to § 20(a) of the Common Policy, and

---

[6] Nothing prevented Bachman from also filing a petition to vacate the March 26, 2020 Arbitration Award within the three-month time limitation as required under the Federal Arbitration Act while Bachman sought this other final agency determination.

asked the district court to "nullify" the award. (R.E. 1, Petition, ¶¶ 18-19, PageID.5). Bachman did not actually serve Producers with the petition until December 2, 2020. Bachman generally alleges that the arbitrator failed to request a final agency determination or FCIC interpretation and instead improperly and erroneously interpreted policy provisions of the Common Policy when he concluded that the Loss Adjustment Handbook and Apple Loss Handbook were not part of the Common Policy. (*Id*., at ¶¶ 15-16, PageID.4-5).

In lieu of an answer, Producers filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and 9 U.S.C. §§ 10, 11, and 12, arguing that dismissal was warranted because Bachman failed to plead a valid cause of action under the Arbitration Act, which provides the exclusive remedy for judicial review of arbitration awards issued pursuant to the Common Policy. (R.E. 23, Brief in Support of Motion to Dismiss, PageID.116-123). Producers also contended that Bachman lacked a separate and independent cause of action for "nullification" because only the FCIC may nullify an arbitration award issued pursuant to the Common Policy. (*Id*., PageID.123-128). Finally, Producers argued that Bachman failed to file the petition within the three-month time limitation set forth under § 12 of the Arbitration Act because the arbitration award was issued March 26, 2020 but Bachman did not file its petition until November 19, 2020 (and Bachman did not attempt to serve it until December 2, 2020 with service not perfected until

December 11, 2020). (*Id.*, PageID.128-30).

Bachman opposed the motion, arguing that nullification and judicial review under the Common Policy are separate from and independent of the Arbitration Act.  (R.E. 24, Response, PageID.140-147).  Bachman also requested that the district court permit it to amend its petition by adding a second count that would reference the Arbitration Act.  Bachman contended that such a claim would be timely because the parties agreed (through § 20(b)(3) of the Common Policy) to a one-year period for seeking judicial review, thereby extending the three-month notice requirement in the Arbitration Act.  Bachman further argued the three-month filing period in 9 U.S.C. § 12 was not jurisdictional but was instead a statute of limitations that could be waived.  (*Id.*, PageID.139, 147-48).

Producers filed a reply brief reiterating that the mandatory provision in § 20(a) of the Common Policy is subject to exclusive jurisdiction of the Arbitration Act, and thus Bachman's allegations of error were an untimely impermissible attack on the arbitration award.  Producers also contended that Bachman lacked an independent cause of action under § 20(a) and 7 C.F.R. § 400.766; rather those provisions made clear that an arbitration award can only be nullified ***by FCIC*** if a party seeks review from FCIC.  (R.E. 25, Reply Brief, PageID.186-189).

Producers further argued that, despite Bachman's arguments to the contrary, the three-month time limit in 9 U.S.C. § 12 is jurisdictional and not altered by the

Common Policy. In Producers' view, the time limitation in § 20(b)(3) reflects the one-year time limit to ***confirm*** an award under the Arbitration Act (9 U.S.C. § 9); whereas the three-month jurisdictional time limit in 9 U.S.C. § 12 applies to ***motions to vacate, modify, or correct***. (R.E. 25, Reply Brief, PageID.189-191). Finally, Producers argued that Bachman's request to amend its petition was improper because it had not filed a motion to amend, and that such a request should be denied as futile in any event, because the proposed amended petition would be untimely under the Arbitration Act. (*Id.*, PageID.191).[7]

### 2. The district court ruled in favor of Producers.

The district court held a hearing on Producers' motion. (R.E. 41, 8/3/21 Transcript, PageID.254-273). The district court first noted that the Arbitration Act is the controlling law and explained:

> [O]nce an arbitration has taken place and a ruling has been delivered by the arbitrator, as … in this case, there are two specific provisions that apply to two different ways of dealing with an arbitration award under § 12, if a party, either party, wants to vacate or modify or correct the award, in some way attack the award, then they have three months to do that, to file. On the other hand, and … if one of the parties seeks to confirm the award, they're happy with the award … they have a year to do that, basically. So … it really seems to me that the case is that simple.

(*Id.* at PageID.257. *See also* PageID.270-271).

---

[7] Bachman subsequently filed a motion to amend (R.E. 26, PageID.193-94, R.E. 27, Brief in Support of Motion to Amend, PageID.195-204), which Producers opposed (R.E. 29, PageID.206-214).

The district court stated that the Arbitration Act "provides the exclusive remedy for judicial review of arbitration awards issued pursuant to the [Common Policy], and the petition fails to plead a cause of action under the FAA."  (R.E. 41, 7/29/21 Transcript, PageID.267).   The court also agreed with Producers that Bachman lacked a separate and independent cause of action for nullification; rather the FCIC "alone can nullify an arbitration award if the FCIC determines that the arbitrator improperly made a policy or procedure interpretation …." (*Id*.)  In sum, "the time limitation provided for in 20(b)(3) of the [Common Policy] does not alter the three-month time limitation in 9 U.S.C. § 12 but is consistent with the one-year time limit to seek judicial confirmation of an award under the FAA …." (*Id*., PageID.272).

The district court further observed that Bachman did not file within the three-month period.  (RE 41, 7/29/21 Transcript, PageID.258).  Relatedly, as to Bachman's motion to amend, the district court agreed that it would be futile for the same reasons.  (*Id*., PageID.265.  *See also* PageID.272).  In the district court's view, "to suggest that there is some additional way to undermine an arbitrator's agreement outside of the provisions of the FAA is simply not supported by any persuasive authority." (*Id*.).

The district court subsequently issued an order granting Producers' motion to dismiss and denying Bachman's motion to amend.  (RE 39, PageID.252.  *See*

*also* RE 40, PageID.253).  Bachman now brings this appeal.

## <u>STANDARD OF REVIEW</u>

This court reviews de novo the grant or denial of a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005).  A motion for dismissal based on Rule 12(b)(6) tests whether a cognizable claim has been pled.  *Scheid v. Fanny Farmer Candy Shops, Inc*., 859 F.2d 434, 436 (6th Cir. 1988).  Courts are to construe complaints in the light most favorable to the non-movant and accept all factual allegations as true.  *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998).  However, courts are not required to accept as true legal conclusions or unwarranted factual inferences in the complaint.  *Mezibov*, 411 F.3d at 716.  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and quotation marks omitted).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Id*.  (citation and quotation marks omitted).

Additionally, the Arbitration Act "expresses a presumption that arbitration awards will be confirmed."  *Nationwide Mut. Ins. v. Home Ins. Co*., 429 F.3d 640, 643 (6th Cir. 2005), citing 9 U.S.C. § 9.  Thus, "[w]hen courts are called on to review an arbitrator's decision, the review is very narrow; it is one of the narrowest

standards of judicial review in all of American jurisprudence." *Samaan v. Gen. Dynamics Land Sys., Inc*., 835 F.3d 593, 600 (6th Cir. 2016) (citation omitted). The Arbitration Act "provides four grounds upon which a court can vacate an arbitration award: (1) where the award was procured by corruption, fraud, or undue means; (2) where an arbitrator evidenced partiality or corruption; (3) where the arbitrators were guilty of misconduct; and (4) where the arbitrators exceeded their power." *Gibbens v. OptumRx, Inc*., 778 F. App'x 390, 393 (6th Cir. 2019), citing 9 U.S.C. § 10(a).  Additionally, this Court "recognizes a fifth—perhaps collective shorthand—ground for vacatur: an arbitrator's manifest disregard of the law." *Id*.

## SUMMARY OF THE ARGUMENT

The Arbitration Act provides the exclusive remedy for seeking judicial review of arbitration awards regarding federally reinsured and subsidized crop insurance policies.  In this case, Bachman's petition, which does not include a named cause of action against Producers, alleges that the arbitrator independently and improperly found that the Loss Adjustment Handbook and the Apple Loss Handbook are not part of the Common Policy and purports to seek "nullification" of the March 26, 2020 Arbitration Award under § 20 of the Common Policy on that basis.  (R.E. 1, Petition, ¶¶ 15-18, PageID.4-5).  Bachman's allegations of error thus clearly fall within the purview of the Arbitration Act and constitute nothing more than an impermissible collateral attack on the arbitration award.  Therefore, the district court correctly determined that Bachman's petition for "nullification" fails to state a valid cause of action under the Arbitration Act.

This Court should reject Bachman's contention that it has an independent cause of action for nullification based on FCIC's response to certain public comments.  That response, along with the plain text of § 20(a) the Common Policy and 7 C.F.R. § 400.766, make it clear that, while there is a procedure for nullification, an arbitration award can only be nullified *by FCIC* if a party seeks review *from FCIC* and FCIC determines that an arbitration award was based on a disputed policy provision for which there was no request for a final agency

determination, or the award was not in accordance with the final agency determination. ***Judicial review*** of an arbitration award – which is at issue in this case – remains subject to the exclusive jurisdiction of the FAA.

The district court also properly determined that, even if the petition stated a valid cause of action under the Arbitration Act, it is untimely. The Arbitration Act plainly states: "Notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered." 9 U.S.C. § 12. Here, it is undisputed that the arbitration award was entered on March 26, 2020 but Bachman did not file its petition until November 19, 2020 and it was not served until December 2, 2020. Therefore, the district court properly dismissed the petition as untimely.

There is no merit to Bachman's contention that the one-year time limitation for "judicial review" in § 20(b)(3) of the Common Policy encompasses nullification as well as confirmation and overrides the three-month time period of 9 U.S.C. § 12. The time period in 9 U.S.C. § 12 is jurisdictional, not a mere statute of limitations, and thus the various avenues for avoiding that time limit – such as waiver through contract provisions and equitable tolling – are unavailable. Therefore, § 20(b)(3) of the Common Policy is not inconsistent with the three-month jurisdictional time requirement for motions to vacate, modify, or correct in 9 U.S.C. § 12. The time period in § 20(b)(3) reflects the one-year time limit to seek

confirmation of an award, consistent with 9 U.S.C. § 9, which states that "at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award[.]"  Accordingly, the district court's order dismissing Bachman's petition should be affirmed.

## ARGUMENT I

**The District Court Correctly Determined That The Petition Fails To Plead A Valid Cause Of Action Under The Arbitration Act, Which Provides Bachman's Exclusive Remedy For Judicial Review.**

**A.    The Arbitration Act provides the exclusive remedy for judicial review of arbitration awards issued pursuant to the Common Policy.**

The Arbitration Act provides the exclusive remedy for seeking judicial review of arbitration awards regarding federally reinsured and subsidized crop insurance policies issued under the Crop Insurance Act, such as the March 26, 2020 arbitration award at issue in this case.

As discussed above, "7 C.F.R. § 457.8 includes text for a 'Common Crop Insurance Policy' used by insurers, standard throughout the industry, when the FCIC provides reinsurance." *Davis*, 762 F.3d at 1284-1285. "The standard language found in the regulations for inclusion in the common crop insurance contract provides that all disputes between insurer and insured are subject to mediation and/or arbitration." *Id.* at 1285 (emphasis added). More specifically, § 20 of the Common Policy, provides:

> (a)    *If you and we fail to agree on any determination made by us* except those specified in section 20(d) or (e), the disagreement may be resolved through mediation in accordance with section 20(g). If resolution cannot be reached through mediation, or you and we do not agree to mediation, *the disagreement must be resolved through arbitration in accordance with the rules of the American Arbitration Association (AAA)*, except as provided in sections 20(c) and (f), and unless rules are established by FCIC for this purpose. …

> (1)    All disputes involving determinations made by us, except those specified in section 20(d) or (e), are subject to mediation or arbitration. However, if the dispute in any way involves a policy or procedure interpretation, regarding whether a specific policy provision or procedure is applicable to the situation, how it is applicable, or the meaning of any policy provision or procedure, either you or we must obtain an interpretation from FCIC in accordance with 7 CFR part 400, subpart X or such other procedures established by FCIC.
>
> > (i)     Any interpretation by FCIC will be binding in any mediation or arbitration.
> >
> > (ii)    Failure to obtain any required interpretation from FCIC will result in the nullification of any agreement or award.
> >
> > (iii)   An interpretation by FCIC of a policy provision is considered a determination that is a matter of general applicability.
> >
> > (iv)    An interpretation by FCIC of a procedure may be appealed to the National Appeals Division in accordance with 7 CFR part 11.

(R.E. 1-1, Common Policy, PageID.39 (emphasis added)).

Under the plain language of this provision, the Common Policy's arbitration provision is subject to the Arbitration Act, which was enacted in response "to hostility of American courts to the enforcement of arbitration agreements …." *Cir. City Stores, Inc. v. Adams*, 532 U.S. 105, 111 (2001). *See also Great Am. Ins. Co. v. Russell,* 914 F.3d 1147, 1150 (8th Cir. 2019) ("The Federal Arbitration Act is a congressional declaration of a liberal federal policy favoring arbitration agreements.") (quotation marks and citation omitted).

The Arbitration Act provides that an arbitration award may be vacated on

the following grounds:

> (1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). The act further provides that an arbitration award may be modified or corrected on the following grounds:

> (a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award. (b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted. (c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

9 U.S.C. § 11. Finally, 9 U.S.C. § 12, provides the following time limitation: "Notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered."

Importantly, "[a]lthough the regulations impose certain limitations on the powers of arbitrators assessing federally-reinsured crop insurance claims …, arbitral awards are still governed by the Federal Arbitration Act." *Russell*, 914 F.3d at 1149. *See also Campbell's Foliage, Inc. v. Fed. Crop Ins. Corp.*, 2013 WL

12086666, at *2-3 (S.D. Fla. Apr. 8, 2013) ("[T]he Court concludes the 'judicial review' allowed under the applicable crop insurance policy provides review of the arbitration decision ***only to the extent permitted by the FAA***…. FAA principles should reasonably guide the Court's review of an appeal of the arbitration decision, and interpretation of FAA principles does not provide for a broad review of an arbitration decision.") (quotation marks and citations omitted; emphasis added).

Numerous federal courts have noted that the mandatory arbitration provision in § 20(a) of the Common Policy is subject to the exclusive jurisdiction of the Arbitration Act because it contains a written agreement to arbitrate and involves interstate commerce. *See Campbell's Foliage, Inc. v. Fed. Crop Ins. Corp*., 562 F. App'x 828, 831 (11th Cir. 2014) ("[S]ection 20(c) [of the Common Policy] provides for arbitration that would result in an award that can be meaningfully confirmed, modified, or vacated by a court upon proper motion, and thus, the arbitration is within the scope of the [Arbitration Act].") (quotation marks and citation omitted); *Occidental Fire & Cas. Co. of N. Carolina v. Bush*, 2020 WL 2733811, at *4 (E.D. Mo. May 26, 2020) (The Arbitration Act applies to federal crop insurance policies "because a written agreement to arbitrate exists within a contract involving commerce."); *Ackerman v. United States Dep't of Agric., No. 17-CV-11779,* 2018 WL 1858165, at *11 (E.D. Mich. Apr. 18, 2018), on reconsideration in part, No. 17-CV-11779, 2018 WL 2560395 (E.D. Mich. June 1,

23

2018) ("Federal courts have consistently held that the arbitration provisions of the Basic Provisions of the Common Crop Insurance Policy are valid and enforceable under the FAA."); *Svancara v. Rain & Hail, LLC*, No. 8:09CV144; 2009 WL 2982906, *3 (D. Neb. 2009) (crop insurance policies are reinsured under the authority of the Crop Insurance Act, and therefore, they "are contracts involving interstate commerce," and "are governed by the FAA"); *In re 2000 Sugar Beet Crop Ins. Litig*., 228 F. Supp. 2d 992, 995 (D. Minn. 2002) (federal crop insurance policy is subject to the Arbitration Act because "insurance policies are contracts 'involving commerce'").

In other contexts, this Court has held that the Arbitration Act provides the exclusive remedy for judicial review of arbitration awards where the arbitration is otherwise governed by the Arbitration Act. For example, in *Decker v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 205 F.3d 906, 909 (6th Cir. 2000), the Court rejected the plaintiff's argument that an independent cause of action for attacking an arbitration award existed outside the Arbitration Act. In that case, the plaintiff filed suit against Merrill Lynch following an arbitration award, alleging various common law tort and contract claims and seeking to set aside the arbitration award. *Id*. at 907-908. Following removal to federal court, Merrill Lynch filed a motion to dismiss for failure to state a claim, and the district court agreed, concluding that the plaintiff's complaint "constitutes a collateral attack on the arbitration award in

24

violation of the [Arbitration Act], which provides the exclusive remedy to challenge an arbitration award." *Id.* at 908.

On appeal, this Court affirmed the district court's ruling and rejected the plaintiff's argument that her claims constituted a "separate, independent action" outside the scope of the Arbitration Act. *Decker*, 205 F.3d at 909-10. The Court explained that ***"[o]nce an arbitration is conducted under a valid arbitration contract, the [Arbitration Act] 'provides the exclusive remedy for challenging acts that taint an arbitration award*.'"** *Id.* at 909, quoting *Corey v. New York Stock Exch.*, 691 F.2d 1205, 1211 (6th Cir. 1982) (emphasis added). The Court stated that "[a]n arbitrator's award will be binding on the parties unless they challenge the validity of the underlying contract to arbitrate under § 2 of the [Arbitration Act] or seek to vacate, modify, or correct the award under §§ 10 or 11 [of the Arbitration Act]." *Id.* Thus, the Arbitration Act "'provides the exclusive remedy for challenging acts that taint an arbitration award[,]' … and [b]ecause [the plaintiff] chose to attack collaterally the arbitration award in violation of the FAA, she fail[ed] to state a claim upon which relief may be granted." *Id.*, quoting *Corey*, 691 F.2d at 1211.

Similarly, in *Corey*, the plaintiff filed a lawsuit against the New York Stock Exchange following his unsuccessful arbitration against Merrill Lynch. *Corey*, 691 F.2d at 1207. In concluding that the plaintiff's lawsuit was an impermissible

collateral attack on the arbitration award between the plaintiff and Merrill Lynch, this Court held that: "Sections 10, 11 and 12 of the Arbitration Act provide a mechanism whereby parties to an arbitration proceeding may obtain judicial review in the federal district court in the district in which the arbitration award is made. The scope of review is limited by these provisions." *Id*. at 1212. The Court explained that "[o]nce an arbitrator has rendered a decision the award is binding on the parties unless they challenge the underlying contract to arbitrate pursuant to section 2 [of the Arbitration Act] or avail themselves of the review provisions of sections 10 and 11." *Id*. "Barring these two situations, the Arbitration Act provides no other avenue by which an arbitration award may be challenged." *Id*. In other words, "allegations within the purview of section 10 are reviewable only under the authority of the federal Arbitration Act." *Id*. *See also Uhl v. Komatsu Forklift Co.*, 512 F.3d 294, 304 (6th Cir. 2008) ("A party must typically request vacation under the [Arbitration Act], rather than try to attack an arbitration agreement through breach-of-contract claims.").

In this case, Bachman's petition, which does not include a named cause of action against Producers, alleges that the arbitrator independently and improperly found that the Loss Adjustment Handbook and the Apple Loss Handbook are not part of the Common Policy and purports to seek "nullification" of the March 26, 2020 arbitration award under the Common Policy on that basis. (R.E. 1, Petition,

¶¶ 15-18, PageID.4-5). Bachman's allegations of error thus clearly fall within the purview of the Arbitration Act and constitute nothing more than an impermissible collateral attack on the arbitration award. Bachman's exclusive remedy for seeking judicial review is limited to §§ 10, 11, and 12 of the Arbitration Act. *Decker*, 205 F.3d at 909; Corey, 691 F.2d at 1211-1212. Consequently, Bachman's petition for "nullification" fails to state a cause of action and this Court should affirm the district court's order of dismissal.

**B.    Despite Bachman's protestations to the contrary, the federal regulations and Common Policy do not permit a separate cause of action apart from the Arbitration Act.**

Bachman acknowledges that this Court has assumed that the Arbitration Act applies to actions that seek nullification of an arbitrator's decision under § 20(a) of the Common Policy. (Bachman's Brief on Appeal, p 20, n. 1, citing *Farmers Mut. Hail Ins. Co. of Iowa v. Miller* ("*Miller Appellate Decision*"), No. 20-1978, 2021 WL 3044275, at *1 (6th Cir. July 20, 2021). Nevertheless, Bachman maintains that it has an independent basis for "nullification" of the arbitration award that is not subject to the Arbitration Act. Bachman relies on FCIC's 2018 response to public comments regarding FCIC's 2015 proposed changes to the regulations governing the procedure for handling disputes arising under § 20 of the Common Policy – specifically, language added to 7 C.F.R. § 400.766 providing that the failure of an arbitrator "to adhere to the final agency determination under this

subject will result in the nullification of any award or agreement in arbitration or mediation." (Bachman's Brief on Appeal, p 21, quoting 80 Fed. Rg. 14032 (2015)). Bachman concludes that FCIC "has taken the position that the nullification of arbitration awards based on the failure of an arbitrator or the parties to seek a final agency determination with respect to the interpretation of the policy represents a mechanism for setting aside an arbitration award that operates independently of the FAA," and that this Court should give deference to this position. (*Id.*, pp 20-26, citing 83 Fed. Reg. 66575-76).

Bachman reads too much into FCIC's response to public comments, which have no force or effect of law, while disregarding the plain language of 7 C.F.R. § 400.766 and §20(a)(1) of the Common Policy. The public comments and FCIC's response are concerned with ***FCIC***'s authority to nullify an arbitration award – not a separate cause of action for nullification. For example, as FCIC stated:

> FCIC has revised this rule to allow persons to obtain a determination by FCIC when that person believes that a failure to comply with this subpart took place during an arbitration by not obtaining, adhering, or requesting a final agency determination or FCIC interpretation. ***Once FCIC determines*** that a final agency determination or FCIC interpretation was required in an arbitration or litigation, the provisions are revised to specify ***the award is automatically nullified***.

83 FR 66574-01, 66577 (emphasis added).

The relevant regulation, 7 C.F.R. § 400.766, provides:

> (4)   If either party believes an award or decision was rendered by NAD, arbitrator, mediator, or judge based on a disputed

provision in which there was a failure to request a final agency determination or FCIC interpretation or NAD, arbitrator, mediator, or judge's decision was not in accordance with the final agency determination or FCIC interpretation rendered with respect to the disputed provision, ***the party may request FCIC review*** the matter to determine if a final agency determination or FCIC interpretation should have been sought in accordance with § 400.767.

(i)   Requests should be submitted through one of the methods contained in § 400.767(a)(1);

(ii)  ***If FCIC determines*** that a final agency determination or FCIC interpretation should have been sought and it was not, or the decision was not in accordance with the final agency determination or FCIC interpretation rendered with respect to the disputed provision:

(A)   ***The award is automatically nullified***; and

(B)   Either party may appeal FCIC's determination that a final agency determination or FCIC interpretation should have been sought and it was not, or the decision was not in accordance with the final agency determination or FCIC interpretation rendered with respect to the disputed provision to NAD in accordance with 7 CFR part 11.

(Emphasis added).    Thus, 7 C.F.R. § 400.766 provides a procedure for nullification, however, that section clearly states that an arbitration award can only be nullified ***by FCIC*** if a party seeks review from FCIC and FCIC determines that an arbitration award was based on a disputed policy provision for which there was ***no request*** for a final agency determination, or the award was not in accordance with the final agency determination.  Here, Bachman did not follow this procedure to seek nullification of the Arbitration Award from FCIC because a final agency determination was provided during the arbitration in the form of Ms. King's

testimony, as permitted under the federal regulations. Instead, Bachman improperly sought another final agency determination following the arbitration.

Additionally, pursuant to 7 C.F.R. § 400.766(b)(4)(i), a party must seek FCIC review – either a final agency determination or FCIC interpretation – through the Risk Management Agency's Deputy Administrator under the procedure set forth in 7 C.F.R. § 400.767. *Judicial review* of an arbitration award – which is at issue in this case – remains subject to the exclusive jurisdiction of the FAA.

The Common Policy, §20(a)(1), incorporates 7 C.F.R. § 400.766(b)(4) as follows:

> [I]f the dispute in any way involves a policy or procedure interpretation, regarding whether a specific policy provision or procedure is applicable to the situation, how it is applicable, or the meaning of any policy provision or procedure, either you or we must obtain an interpretation from FCIC in accordance with 7 CFR part 400, subpart X[8] or such other procedures established by FCIC.

(R.E. No. 1-1, PageID.39 (footnote added)). Likewise, consistent with 7 C.F.R. § 400.766(b)(4)(ii), the Common Policy, §20(a)(1)(ii), provides that "[f]ailure to obtain any required interpretation from FCIC will result in the nullification of any agreement or award." (*Id.*). Thus, neither 7 C.F.R. § 400.766(b)(4) nor § 20(a) of the Common Policy permit a court to interpret any provision of the Common

---

[8] 7 CFR § 400.766 is located in 7 CFR part 400, subpart X.

Policy during judicial review of an arbitration award.

The facts and reasoning in *Miller* are instructive and demonstrate the concept of nullification in the context of judicial review. In the district court (*Farmers Mut. Hail Ins. Co. of Iowa v. Miller*, 366 F. Supp. 3d 974, 975-96 (W.D. Mich. 2018) ("*Miller I*")) the policyholder and the crop insurer went to arbitration over a dispute regarding the crop insurer's determination of no indemnity payment for crop losses in 2014 and the crop insurer's redetermination of indemnity payments previously made for crop losses in 2012 and 2013. The arbitrator ruled that the crop insurer properly determined that it overpaid on the 2012 and 2013 crop losses, and that no indemnity was owed on the 2014 crop loss. *Id*. at 976- 77. Thereafter, the crop insurer moved to confirm the arbitration award in federal district court, and the farmer policyholder sought vacation of the arbitration award. *Id*. at 975.

The district court did not find a separate or independent cause of action for the farmer policyholder to seek "nullification" under § 20(a) of the Common Policy. Rather, the court indicated that the farmer policyholder may have a defense to confirmation of the arbitration award under § 20 because "[t]he retroactive redeterminations necessarily involved policy decisions that neither the Arbitrator nor this Court has power to make in the first instance." *Miller I*, 366 F. Supp. 3d at 975. In making this pronouncement, the district court implicitly

acknowledged that the Common Policy properly reflects 7 C.F.R. § 400.766(b)(4), which, again, states that **only FCIC** may nullify an arbitration award issued pursuant to the Common Policy.

*Miller I* acknowledged that there was no basis to vacate the arbitration award under the Arbitration Act, but concluded that a policy interpretation needed to be made by FCIC pursuant to § 20 of the Common Policy before confirming the award:

> But the only point necessary for nullification is the recognition that some policy construction was necessarily made [during the arbitration]. And under the policy, neither the Arbitrator nor this Court may do that in the first instance. The function is reserved to the FCIC under Section 20(a)(1)(ii) ....

*Miller I*, 366 F. Supp. 3d at 979.

Following *Miller I*, the parties sought and received Final Agency Determination 287 from the Risk Management Agency. Farmers Mutual (the crop insurer) then sought confirmation of the arbitration award for a second time in *Farmers Mut. Hail Ins. Co. of Iowa v. Miller*, Case No. 1:19-cv-1005 (W.D. Mich. Sept. 9, 2020) ("*Miller II*"). Consistent with *Miller I*, the district court in *Miller II* confirmed the arbitration award because there was now an FCIC interpretation governing the policy provisions at issue in the original arbitration. (R.E. 23-1, *Miller II* Order, PageID.132-134).

This Court affirmed the district court's decision, first noting that Miller's

appeal challenged "the arbitrator's authority to construe the Policy and the court's handling of the claim after its initial ruling" and that the parties "*agree that the Federal Arbitration Act applies to this dispute*."  *Miller Appellate Decision*, 2021 WL 3044275, at *2 (emphasis added).  The Court went on to explain:

> The Insurance Corporation reserves the right to interpret the Crop Insurance Policy and to determine how best to protect the relevant stakeholders.  …  Although the Insurance Corporation recommends that regulated entities seek its interpretation before an arbitrator makes a decision, *see id*. § 400.766(b)(1), parties may ask the agency for its views after the arbitrator acts, see Final Agency Determination 230 (April 10, 2015), https://www.rma.usda.gov/Policy-andProcedure/Final-Agency-Determinations/Basic-Provisions-20a-FAD-230, R.17-2; see also Final Agency Determination 232 (April 10, 2015), https://www.rma.usda.gov/Policy-andProcedure/Final-Agency-Determinations/Basic-Provisions-20a-FAD-232, R.17-3.  *If the Corporation provides an interpretation after the arbitrator has acted, "the arbitration award must be reviewed to determine if it is consistent" with the agency's view*.  See Final Agency Determination 230, R.17-2 at 3.  The arbitration award must be nullified if it is "determined that the inconsistency materially affected the award." *Id*.

*Id*.  Ultimately this Court held that because the arbitrator's award was consistent with the agency's view, "[t]he district court correctly confirmed the arbitration award." *Id*. at *3 (emphasis added).  Thus, neither *Miller I, Miller II,* or this Court's decision allows Bachman to bring an affirmative claim for judicial review of the March 26, 2020 arbitration award apart from the specific standards set forth in the Arbitration Act.

Here, Bachman chose not to engage in the proper procedure provided in 7 C.F.R. § 400.766(b)(4) and § 20(a) of the Common Policy necessary to obtain an

FCIC determination that the arbitration award should be nullified (*i.e.*, seeking review through the Risk Management Agency's Deputy Administrator as provided in 7 C.F.R. § 400.767(a)). This was because Risk Management Agency representative Desiree King testified at the arbitration hearing and provided FCIC interpretation with respect to the Common Policy as authorized under 7 C.F.R. § 400.766(b)(1)(ii). And, Bachman failed to seek timely judicial vacation of the award under the Arbitration Act. Instead, following the arbitration, Bachman chose to seek an improper second final agency determination from the Risk Management Agency under 7 C.F.R. § 400.767 (without notice to Producers) one month after the arbitration and received Final Agency Determination 298.[9] Bachman then filed its petition before the district court, in which it failed to state a claim under the Arbitration Act, and instead improperly seeks "nullification" from the district court on the basis of the subsequently obtained final agency determination.[10]

---

[9] Bachman's May 8, 2020 request failed to comply with its obligations for the request under 7 C.F.R. § 400.767 because Bachman did not notify Producers of the request. Bachman also failed to inform the Risk Management Agency that the arbitration had already taken place and that a Risk Management Agency witness (Ms. King) had provided testimony at the arbitration that constituted a final agency determination.

[10] It should also be noted that the FCIC's response to public comments and resulting rule are concerned with situations where the arbitrator or parties fail to seek a final agency determination. Here, however, as noted above but completely *(cont'd on next page)*

In sum, under the procedural framework provided in the Arbitration Act, the Common Policy, and the attendant federal regulations, *judicial review* of an arbitration award in the federal courts is subject to the exclusive jurisdiction of the Arbitration Act and *FCIC alone* can nullify an arbitration award if FCIC determines that the arbitrator improperly made a policy or procedure interpretation under 7 C.F.R. § 400.766(b)(4) and § 20(a) of the Common Policy.[11]  Accordingly, Bachman's request for nullification before the district court was improper, and

---

unacknowledged by Bachman, Risk Management Agency representative Desiree King in fact testified at the arbitration hearing, and her testimony was expressly relied upon by the arbitrator for his determination that the Loss Adjustment Handbook and Apple Loss Handbook were not part of the Common Policy.  (R.E. 1-5, PageID.59, 63-64).  Ms. King's testimony and the arbitrator's reliance thereon was authorized under 7 C.F.R. § 400.766(b)(1)(ii), which states: "The final agency determination or FCIC interpretation may take the form of a written interpretation or, at the sole discretion of FCIC, may take the form of testimony from an employee of RMA expressly authorized in writing to provide interpretations of policy or procedure on behalf of FCIC."  Given that authorized testimony was provided during the arbitration, and the arbitrator ruled consistent with the Risk Management Agency's policy interpretation at the arbitration, there are no grounds to overturn the arbitration award.  Bachman should not be permitted to subsequently obtain a second and contrary final agency determination and use that to nullify the award and redo the arbitration under the Common Policy or Federal Regulations.

[11] In this case, no ground existed for FCIC to nullify the arbitration award because the arbitrator did not make an improper policy interpretation.  The arbitrator relied on the Risk Management Agency's policy interpretation in the form of Ms. King's testimony as permitted under the federal regulations, and her testimony was subject to cross examination by Bachman.  Bachman could have also sought a stay of the arbitration proceedings to challenge Ms. King's testimony, but it did not.  Instead, Bachman accepted the testimony of Ms. King as FCIC policy interpretation at the arbitration and the arbitrator ruled consistently with Ms. King's testimony.

therefore, the district court properly dismissed the petition for failure to state a claim.

## ARGUMENT II

**The District Court Correctly Determined That Bachman's Petition Was Untimely Under The Arbitration Act, Thus Requiring Dismissal With Prejudice.**

### A.    Bachman's petition was untimely.

The district court also correctly determined that Bachman failed to file the petition within three months after the March 26, 2020 arbitration award, as required under the Arbitration Act, and therefore, the petition was untimely and properly dismissed.

As discussed above, the Arbitration Act provides Bachman's exclusive remedy for seeking to set aside the arbitration award.  The Arbitration Act plainly states: "Notice of a motion to ***vacate,*** modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered."  9 U.S.C. § 12 (emphasis added).  In a well-reasoned and in-depth opinion, the Supreme Court of Nebraska explained that "the 3-month notice requirement of § 12 is jurisdictional in nature," and therefore, "failure to comply with the requirement deprived the district court of authority under the [Arbitration Act] to vacate an arbitration award under § 10."  *Karo v. NAU Country Ins. Co*., 901 N.W.2d 689, 704 (Neb. 2017).  The court explained that "[u]nlike statutes of limitation that govern filing actions in the trial courts, statutory time limits on appellate review are almost always considered jurisdictional in nature, both

historically and presently, and strict compliance with such time limits is necessary." *Id*. at 702-703, citing *Bowles v. Russell*, 551 U.S. 205 (2007). The court also acknowledged the U.S. Supreme Court's directive that to determine whether a provision is jurisdictional, it asks

> whether Congress has clearly stated that the rule is jurisdictional; absent such a clear statement, we have cautioned, courts should treat the restriction as nonjurisdictional in character. ... This is not to say that Congress must incant magic words in order to speak clearly. We consider context, including this Court's interpretations of similar provisions in many years past, as probative of whether Congress intended a particular provision to rank as jurisdictional.

*Id*. at 699, quoting *Sebelius v. Auburn Regional Medical Center*, 568 US 145; 133 S Ct 817; 184 L Ed 2d 627 (2013) (citations and punctuation omitted).

In *Karo*, the Nebraska court first considered the language of 9 U.S.C. § 9, which concerns motions to ***confirm*** an award, as opposed to vacate, modify, or correct. The court focused on the specific language of that section instructing that "[n]otice of the application shall be served upon the adverse party, and ***thereupon the court shall have jurisdiction*** of such party as though he had appeared generally in the proceeding." 9 U.S.C. § 9 (emphasis added). The court found this language to be "a clear indication that Congress intended the statutory requirements for serving notice of an application for expedited judicial review under the [Arbitration Act] to be jurisdictional in nature." *Karo*, 901 N.W.2d at 700. Although it is true that § 12, does not repeat the phrase from § 9 referencing jurisdiction, the court

concluded that "it is appropriate to analyze §§ 9 and 12 together when considering the effect of the jurisdictional language." *Id*. at 700-01.  The court went on to explain:

> Although different timeframes apply for serving notice under §§ 9 and 12, there is no difference in the mandatory process by which the adverse party must be served with notice of the application, and no difference in the practical purpose for requiring such notice.  ***It would make little sense for Congress to give clear jurisdictional weight to serving notice in one context but not the other***, and we see nothing in the language or purpose of the FAA that would compel the conclusion that Congress intended the statutory notice requirements for expedited judicial review to be jurisdictional when a party seeks judicial confirmation, but not when a party seeks judicial vacatur or modification.  ***Even though § 9 governs judicial confirmation, it expressly references vacating, modifying, or correcting awards "as prescribed in sections 10 and 11 of this title" before stating the jurisdictional impact of serving notice of applications for judicial review***.  Due to the similarity of the mandatory notice procedures, we analyze §§ 9 and 12 together, and we conclude that whether an arbitrating party is applying for judicial review to confirm an award under § 9 or to vacate or modify an award under §§ 10 and 11, Congress intended that a party's failure to serve notice of the application in the manner directed, and within mandatory time limits, would have jurisdictional consequences.

*Id.* at 701 (emphasis added).

In addition to the Nebraska court's persuasive analysis, it should be noted that federal courts have consistently held that a party is statutorily precluded under the Arbitration Act from bringing a motion to vacate, modify, or correct an arbitration award if the party fails to do so within the three-month period prescribed by 9 U.S.C. § 12.  *Corey*, 691 F.2d at 1212 ("Failure to comply with

this statutory precondition of timely service of notice [in § 12] *forfeits the right to judicial review of the award*.") (emphasis added); *O'Neal Constructors, LLC v. DRT Am., LLC*, 991 F.3d 1376, 1379 (11th Cir. 2021) (Observing that the "notice requirement and time limit" in § 12 are "[s]o important that when a party fails 'to move to vacate an arbitral award within the three-month limitations period' it is barred 'from raising the alleged invalidity of the award as a defense in opposition to a motion ... to confirm the award.' …[T]his bar also applies to the failure to provide the statutorily required notice of a motion to vacate."); *Piccolo v. Dain, Kalman & Quail, Inc*., 641 F.2d 598, 601 (8th Cir. 1981) ("A party to an arbitration award who fails to comply with the statutory precondition of timely service of notice *forfeits the right to judicial review of the award*.  Accordingly, the district court properly determined that the Piccolos' failure to serve their complaint within three months of the award *deprived it of power to review* the award.") (emphasis added); *Pfannenstiel v. Merrill Lynch, Pierce, Fenner & Smith*, 477 F.3d 1155, 1158 (10th Cir. 2007) ("A party to an arbitration award who fails to comply with the statutory precondition of timely service of notice forfeits the right to judicial review of the award."); *Milberg, LLP v. Drawrah Ltd*., 844 F. App'x 397, 399 (2d Cir. 2021), quoting *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 175 (2d Cir. 1984) ("In holding that this deadline [in 9 U.S.C. § 12] applies to a motion to vacate even if interposed as a defense against a motion to confirm an arbitral

award, this Court has stated that 'there is no common law exception to the three month limitations period.'"); *Int'l Union of Operating Engineers, Local No. 841 v. Murphy Co.*, 82 F.3d 185, 187-189 (7th Cir. 1996) (Under section 12 of the Arbitration Act, "[o]nce the three-month limitation period expired, [the defendant] was precluded from advancing as defenses to the Union's confirmation action arguments (such as the need for further arbitration) that it could have asserted in conjunction with a timely motion to vacate, modify or correct the award.").

Here, it is undisputed that the arbitration award was entered on March 26, 2020 (R.E. 1, Petition, ¶ 12, PageID.3; RE 1-5, Arbitration Award. PageID.58-71). Bachman did not file its Petition until November 19, 2020 (RE 1, PageID.1), and did not attempt to serve it until December 2, 2020 with service not perfected until December 11, 2020, which was well past the three-month time limitation set forth under in 9 U.S.C. § 12. Therefore, even if the petition stated a claim under the Arbitration Act, and it does not, the district court properly dismissed it as untimely.

**B.    Bachman's arguments to the contrary do not compel a different conclusion.**

As it did in the district court, Bachman insists that the one-year time limitation in § 20(b)(3)[12] of the Common Policy overrides the three-month time

---

[12] Section 20(b)(3) states: "If arbitration has been initiated in accordance with section 20(b)(1) and completed, and ***judicial review*** is sought, suit must be filed not later than one year after the date the arbitration decision was rendered …" *(cont'd on next page)*

period of 9 U.S.C. § 12.  (Bachman's Brief on Appeal, p 27).  In Bachman's view, § 20(b) of the Common Policy refers to "judicial review" of an arbitrator's decision, which encompasses nullification as well as confirmation.  (*Id*., p 28).  In support of its position, Bachman cites *Overdorff v. NAU Country Ins. Co*., No. CV 18-79, 2018 WL 3637471 (W.D. Pa. July 31, 2018), wherein the district court agreed that a motion to vacate could be brought within the one-year time period referenced in § 20(b)(3) of the Common Policy, and like Bachman (see Bachman's Brief on Appeal, pp 31-33), relies on the general proposition of law that an arbitration agreement must be enforced according to its terms.  The court noted that § 20(b)(3) "expressly provides that an aggrieved claimant may seek judicial review 'not later than one year after the date the arbitration decision was rendered,'" and therefore, the plaintiff's "initiation of judicial proceedings" a year after the arbitrator issued a final award was timely.  *Id*. at *5.

The *Overdorff* court's reasoning, such that it is, lacks any reference to the exclusive jurisdiction of the Arbitration Act.  Moreover, it fails to take into consideration the issue raised in *Karo,* i.e., that the time period in 9 U.S.C. § 12 is jurisdictional, not a mere statute of limitations, and thus various avenues for avoiding that time limit – such as waiver through contract provisions and equitable

---

(Emphasis added).

tolling – are inapplicable:

> Most statutes of limitations seek primarily to protect defendants against stale or unduly delayed claims. Thus, the law typically treats a limitations defense as an affirmative defense that the defendant must raise at the pleadings stage and that is subject to rules of forfeiture and waiver. Such statutes also typically permit courts to toll the limitations period in light of special equitable considerations.
>
> Some statutes of limitations, however, seek not so much to protect a defendant's case-specific interest in timeliness as to achieve a broader system-related goal, such as facilitating the administration of claims, limiting the scope of a governmental waiver of sovereign immunity, or promoting judicial efficiency. The Court has often read the time limits of these statutes as more absolute, say, as ***requiring a court to decide a timeliness question despite a waiver, or as forbidding a court to consider whether certain equitable considerations warrant extending a limitations period***. As convenient shorthand, the Court has sometimes referred to ***the time limits in such statutes as "jurisdictional."***

*John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 133-34 (2008) (citations omitted, emphasis added). *See also Sec. & Exch. Comm'n v. Fowler*, 6 F.4th 255, 262 (2d Cir.), cert. denied, 142 S. Ct. 590 (2021) (where applicable statute was "a ***nonjurisdictional*** statute of limitations … the parties' tolling agreement ***was*** enforceable," and therefore, the district court had the authority to hear this case.") (emphasis added).

In light of these considerations, § 20(b)(3) of the Common Policy is not inconsistent with the three-month jurisdictional time requirement for motions to vacate, modify, or correct in 9 U.S.C. § 12. The time period in § 20(b)(3) reflects the one-year time limit to seek ***confirmation*** of an award, consistent with 9 U.S.C.

§ 9, which states that "at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order ***confirming*** the award[.]" *See Bay Shore Power Co. v. Oxbow Energy Sols., LLC*, 969 F.3d 660, 664 (6th Cir. 2020), citing 9 U.S.C. § 9 ("Aside from narrow grounds allowing a court to modify, vacate, or correct an award … courts can do no more than confirm or deny confirmation of the award. An action to confirm the award should be a summary proceeding, not a proceeding in which the defendant seeks affirmative relief.") (citation and punctuation omitted).

There is likewise no merit to Bachman's suggestion that the fact that a party is allowed to seek a final agency determination after an arbitration award has been rendered compels the conclusion that this Court should disregard the time period set forth in 9 U.S.C. § 12 for actions seeking to vacate an arbitration award. (*See* Bachman's Brief on Appeal, pp 34-35). As discussed above, Bachman's remedy was to seek nullification from the FCIC – not file in the district court an untimely action to vacate under the Arbitration Act. Furthermore, nothing restricted Bachman from filing a motion to vacate pursuant to the Arbitration Act while at the same time pursing a second final agency determination.

Finally, as discussed above, Bachman's request for equitable tolling should be rejected because such tolling may not be applied where the time period in 9 U.S.C. § 12 is jurisdictional. *John R. Sand & Gravel*, 552 U.S. at 133-34. Indeed,

courts have determined that equitable tolling does not apply to the Arbitration Act. *See Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 175 (2d Cir. 1984) ("[T]here is no common law exception to the three month limitations period on the motion to vacate."); *Cigna Ins. Co. v. Huddleston*, 986 F.2d 1418 (5th Cir. 1993) ("There is no 'discovery rule' or 'equitable tolling' exception to the requirement in section 12 of the [Arbitration Act] that the defenses of fraud or impartiality be asserted within three months from the time that the arbitration award is filed or delivered."). *See also Taylor v. Nelson*, 788 F.2d 220, 225 (4th Cir. 1986) ("The existence of any [tolling or due diligence exception] to § 12 is questionable, for they are not implicit in the language of the statute, and cannot be described as common-law exceptions because there was no common-law analogue to enforcement of an arbitration award.").

Even if equitable tolling were available, Bachman has not presented a compelling argument as to why it would be warranted in this case. As this Court has explained,

> To determine whether equitable tolling is available to a plaintiff, a court considers five factors: (1) the plaintiff's lack of notice of the filing requirement; (2) the plaintiff's lack of constructive knowledge of the filing requirement; (3) the plaintiff's diligence in pursuing her rights; (4) an absence of prejudice to the defendant; and (5) the plaintiff's reasonableness in remaining ignorant of the particular legal requirement.

*Jackson v. United States*, 751 F.3d 712, 719 (6th Cir. 2014). Not every factor will

be relevant in all cases, and "the decision whether to equitably toll a period of limitations must be decided on a case-by-case basis." *Truitt v. County of Wayne*, 148 F.3d 644, 648 (6th Cir. 1998) (citations omitted).

Here, Bachman does not – because it cannot – credibly claim that it lacked notice or constructive knowledge of the time period in 9 U.S.C. § 12, nor that it was reasonable in remaining ignorant. Instead, Bachman has simply decided that the time period does not apply. In support of its claim that it is entitled to equitable tolling, Bachman argues only that it was diligent in pursuing its rights because it sought an after-the-fact final agency determination – it does not address any other factors or circumstances.

With respect to Bachman's alleged diligence, Bachman in fact waited until a month *after* the arbitration award was issued before it sought the final agency determination. Although this is not expressly prohibited under the regulations, one presumes Bachman chose this timing because it was not happy with the fully authorized hearing testimony of Ms. King, the Risk Management Agency's representative. Importantly, Ms. King's testimony is allowed by the regulations and in fact constitutes a final agency determination. *See* 7 C.F.R. § 400.766(b)(1)(ii) ("The final agency determination or FCIC interpretation may take the form of a written interpretation or, at the sole discretion of FCIC, ***may take the form of testimony from an employee of RMA*** expressly authorized in writing

to provide interpretations of policy or procedure on behalf of FCIC.") (emphasis added).  Bachman thus cannot demonstrate that the arbitrator failed to follow proper procedure in obtaining a final agency determination such that it should be entitled to equitable relief; rather, Bachman simply seeks a do-over with its newly obtained, contradictory final agency determination.

Moreover, even if Bachman was given the benefit of equitable tolling from March 26, 2020 until the second final agency determination was received by Bachman on August 4, 2020, Bachman still did not file its petition in district court until November 19, 2020 and it was not served on Producers until December 2, 2020 – both of which dates were more than three months after receiving FAD-298. Thus, even if equitable tolling were available (which it is not), Bachman's petition would still be untimely under the three-month time limit in the Arbitration Act.

In sum, where the time limit in 9 U.S.C. § 12 is jurisdictional, Bachman cannot rely on waiver through contract provisions or equitable tolling to avoid its consequences, nor should equitable tolling be applied in any event.  Accordingly, where the arbitration award was issued on March 26, 2020, but the petition was not filed until November 19, 2020, Bachman did not attempt to serve it until December 2, 2020, and service was not perfected until December 11, 2020, the petition is untimely.  Therefore, this Court should affirm the district court's order dismissing the Petition with prejudice.

## **CONCLUSION**

For the reasons set forth herein, Respondent-Appellee, Producers Agriculture Insurance Company, respectfully requests that this Court affirm the district court's order granting Respondent-Appellee's motion to dismiss and grant all such other relief to which it is entitled.

Respectfully submitted,

PLUNKETT COONEY

By:    */s/Josephine A. DeLorenzo*
JOSEPHINE A. DELORENZO
ELAINE M. POHL
OLIVIA M. PAGLIA
38505 Woodward Ave, Suite 100
Bloomfield Hills, MI 48304
Tel: (248) 901-4000
jdelorenzo@plunkettcooney.com
ephol@plunkettcooney.com
opaglia@plunkettcooney.com

*Attorneys for Respondent-Appellee*
*Producers Agriculture Insurance Company*

Dated: March 9, 2022

48

## <u>CERTIFICATE OF COMPLIANCE</u>

STATE OF MICHIGAN          )
                           ) ss.
COUNTY OF OAKLAND          )

Josephine A. DeLorenzo, being first duly sworn, certifies and states the following:

1.      She is an attorney with the firm Plunkett Cooney, and is in principal charge of the above-captioned cause for the purpose of preparing the attached brief on appeal;

2.      The brief on appeal prepared by her office complies with the type-volume limitation, using Times New Roman size 14 font; and

3.      The word processing system counts the number of words in the brief as 10,817.


*/s/Josephine A. DeLorenzo*
JOSEPHINE A. DELORENZO
38505 Woodward Ave, Suite 100
Bloomfield Hills, MI 48304
Tel:  (248) 901-4000
jdelorenzo@plunkettcooney.com

*Attorney for Respondent-Appellee*
*Producers Agriculture Insurance*
*Company*

## <u>CERTIFICATE OF SERVICE</u>

Josephine A. DeLorenzo, being first duly sworn, deposes and says that she is a Shareholder with the Firm of Plunkett Cooney and that on the 9th day of March, 2022, she caused a copy of this document to be served upon all parties of record, and that such service was made electronically upon each counsel of record so registered with the Sixth Circuit Court of Appeals and via U.S. Mail to any counsel not registered to receive electronic copies from the court, by enclosing same in a sealed envelope with first class postage fully prepaid and depositing said envelope and its contents in a receptacle for the U.S. Mail.

*/s/Josephine A. DeLorenzo*
JOSEPHINE A. DELORENZO
38505 Woodward Ave, Suite 100
Bloomfield Hills, MI  48304
Tel:  (248) 901-4000
jdelorenzo@plunkettcooney.com

*Attorney for Respondent-Appellee*
*Producers Agriculture Insurance*
*Company*

## ADDENDUM – DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

| RECORD ENTRY | DATE | DESCRIPTION | PageID # |
|---|---|---|---|
| 1 | 11/19/20 | Petition to Nullify Arbitration Award<br>• 1-1 Common Policy<br>• 1-2 Apple Policy<br>• 1-3 Loss Adjustment Handbook<br>• 1-4 Apple Loss Handbook<br>• 1-5 March 26, 2020 Arbitration Award<br>• 1-6 Final Agency Determination ("FAD") | 1-74 |
| 23 | 6/02/21 | Respondent Producers Agriculture Insurance Company's Brief in Support of Motion to Dismiss<br>• 23-1 *Miller II* Order | 107-135 |
| 24 | 6/02/21 | Petitioner's Response to Respondent's Motion to Dismiss | 136-184 |
| 25 | 6/02/21 | Respondent Producers Agriculture Insurance Company's Reply in Support of Its Motion to Dismiss | 185-192 |
| 26 | 6/18/21 | Motion for Leave to File First Amended Petition | 193-194 |
| 27 | 6/18/21 | Brief in Support of Motion for Leave to File First Amended Petition | 195-204 |
| 29 | 7/02/21 | Respondent Producers Agriculture Insurance Company's Response in Opposition to Petitioner's Motion for Leave to File First Amended Petition | 206-215 |
| 41 | 7/29/21 | Transcript of Hearing July 29, 2021 | 254-273 |